JAMES B. HOLTIN *v.* MOLLIE HOLTIN.

**Husband and Wife—Divorce—New Trial on Newly Discovered Evidence.**

A motion for a new trial should not be granted on account of newly discovered evidence of a questionable character, when the party could have discovered said evidence before by the use of diligence.

APPEAL FROM PENDLETON CHANCERY COURT.

October 24, 1877.

OPINION BY JUDGE PRYOR:

The newly discovered testimony on which the motion for a new trial was based, in our opinion, would not have influenced the opinion of the chancellor. If the charge of adultery made against the wife had been sustained by the testimony of witnesses in such a manner as to leave no doubt as to the truth of the statements made, still the judgment dismissing the petition would have been proper. The appellant had lived with appellee for two years or longer after the birth of the child whose paternity is questioned, and until a short time prior to their separation confided in the purity and virtue of his wife to such an extent as made him hostile to his own parents and kindred, whose suspicions were aroused by reason of the peculiar color of the child. During this whole period all the evidence of a want of chastity on the part of appellee were before him in the appearance of the boy, and no other facts have been developed that should have caused such a change in his mind up to the time at which this action was instituted.

The evidence that he seems to have discovered was almost within his own household and from those who, if we are to judge from the history of this case and the character of the statements made, were scarcely so modest as to decline communicating to the appellant the evidences of his wife's disgrace. One says he had frequent sexual connection with her. The others saw negroes frequently at the husband's home, and using such familiarities with the appellee that if true makes her the most degraded of women. The facts proposed to be established by these affidavits are inconsistent with the testimony of all the neighbors and friends of both parties who have spoken of the general character and deportment of the appellee during her whole married life. They nearly all speak of her general character, and not one alludes even to facts or circumstances upon which a suspicion could rest as to her virtue. The statements of affi

davits is inconsistent with all the evidence in regard to character in the case, and, if true, we are satisfied that no woman so abandoned could have maintained such an unblemished reputation with the virtuous women of her neighborhood. If ready to yield to the animal desire of one of the affiants whenever they were to be gratified, and to embrace the negro men when an opportunity afforded, no concealment of such base passions could have been made by the appellee so as to deceive her intelligent and virtuous associates. Such statements as are found in these affidavits are inconsistent also with appellant's own proof made at a time when the necessity for a discovery became so essential as to make truth of such statements at least questionable.

The evidence is certainly conflicting as to the general features of the child, and while its color might create suspicion as to its paternity the history of the child's ancestors induced the chancellor, no doubt, to efface this dark spot from her character, and, as she has established a reputation for moral worth and virtue that can not be questioned except upon mere suspicion, we concur with the court below in its judgment dismissing the petition, and this same conclusion would be the result if all the testimony for the appellee had been excluded.

*C. H. Duncan, for appellant. Clarke & Simon, for appellee.*